IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MICHELE T. and J. T.,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED HEALTHCARE OXFORD,<br><br>Defendant. | ORDER AND MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS<br><br>Case No. 2:19-cv-507-TC |

Plaintiff Michele T. was insured by Defendant Oxford Health Insurance, Inc. (Oxford).[1] Michele's son, Plaintiff J. T., was a covered dependent. Plaintiffs allege Oxford wrongfully failed to pay for a residential treatment program for J. T. in violation of both the Employee Retirement Income Security Act (ERISA) (see 29 U.S.C. § 1132(a)(1)(B)) and the Mental Health Parity and Addition Equity Act (the "Parity Act") (see 29 U.S.C. § 1132 (a)(3)). Oxford moves to dismiss or stay the complaint. (ECF No. 15.) For the reasons stated below, Oxford's motion is granted in part and denied in part.

## BACKGROUND

J. T. has a history of aggressive behavior and drug and alcohol abuse. (Compl. ¶¶ 9-11.) After a violent incident with his younger brother, J. T. was evaluated by the University of Utah's Neuropsychiatric Institute (UNI) for a possible bipolar disorder diagnosis. (Id. at ¶ 11.) J. T.

---

[1] Defendant was incorrectly identified as "United Healthcare Oxford" in the complaint.

remained at UNI from June 29, 2016, to August 5, 2016.  (Id. at ¶ 12.)[2]  Upon his discharge, UNI recommended that J. T. attend a residential treatment program.  (Id.)  Beginning on August 5, 2016, J. T. was enrolled in a residential treatment program at Triumph Academy in Utah.  (Id. at ¶ 12-14.)  He remained there until October 23, 2017.  (Id. at ¶ 4.)

On August 15, 2016, Oxford informed Michele that it would not pay for J. T.'s treatment at Triumph.  (Id. at ¶ 15.)  Michele appealed this decision on February 2, 2017.  (Id. at ¶ 16.)  Oxford denied the appeal on February 28, 2018.  (Id. at ¶ 28.)[3]  On June 19, 2018, Michele asked an external review agency to evaluate the medical necessity of J. T.'s treatment.  (Id. at ¶ 29.)  That reviewer also recommended that J. T.'s claim be denied.  (Id. at ¶ 37.)  Plaintiffs then brought this suit.

## LEGAL STANDARD

In considering a motion to dismiss, all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to the non-moving party.  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).  Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The court's role "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient."  Miller v. Glanz, 948 F.2d 1526, 1565 (10th Cir. 1991).

//

//

---

[2] Oxford initially denied Michele's request that it pay for J. T.'s treatment at UNI, but ultimately reversed itself following an appeal of the denial.  (Compl. ¶ 13.)

[3] The complaint includes numerous allegations regarding Oxford's negligent handling of this appeal, which took over a year to resolve, but those allegations are not relevant to this motion.  (See id. ¶¶ 16-28.)

## ANALYSIS

### I. <u>Wit</u> Class Action

    A. <u>Mandatory Stay</u>

In 2014, a class action was filed against United Behavioral Health ("UBH"). On September 19, 2016, the Northern District of California certified the following class:

> Any member of a health benefit plan governed by ERISA whose request for coverage of residential treatment services for a mental illness or substance use disorder was denied by UBH, in or whole or in part, on or after May 22, 2011, based upon UBH's Level of Care Guidelines or UBH's Coverage Determination Guidelines.

<u>Wit v. United Healthcare Ins. Co.</u>, Case No. 3:14-cv-02346-JCS (N.D. Cal. Sept. 19, 2016) (Dkt. No. 174).

Oxford argues that Plaintiffs' claims in this action fall within the <u>Wit</u> class action. Because Plaintiffs never opted out of the class in <u>Wit</u>, Oxford moves to either dismiss this action or stay it pending a final judgment in <u>Wit</u>.

The court declines to do so.

First, to the extent Oxford contends a dismissal or stay is mandatory, Oxford is incorrect. Oxford claims that it "is well-established in this Circuit that 'members of [a] plaintiff class in [a] class action cannot bring [a] separate individual action premised on [the] same grounds as [the] pending class action.'" (Mot. at 10, quoting <u>Cimino v. Perrill</u>, Case No. 98-1055, 1998 WL 406826 (10th Cir. 1998).) But no such principle is "well-established" in this circuit.

The primary case Oxford relies on, <u>Cimino</u>, is an unpublished Tenth Circuit decision from 1998, and the quote that Oxford excerpts from that case has been taken out of context. <u>Cimino</u> is not even about class actions. Rather, in that case, an incarcerated petitioner filed three

3

different lawsuits on the same day. In dismissing one of the suits, the district court noted that the petitioner would still be able to obtain relief in his other pending cases. In a brief, four-paragraph-long order, the Tenth Circuit affirmed, stating in part:

> We . . . conclude that the [district court] correctly determined that Petitioner's damages claim should be pursued in one of his "companion" cases. Cf. Rivarde by Rivarde v. State of Missouri, 930 F.2d 641, 643-45 (8th Cir. 1991) (members of plaintiff class in class action cannot bring separate individual action premised on same grounds as pending class action.).

Cimino, 1998 WL 406826 at *1. The Tenth Circuit was simply making the benign point that a single petitioner should not be allowed to proceed simultaneously with three duplicative actions. To support this point, it briefly cited to a case from the Eighth Circuit. The Tenth Circuit's citation to Rivarde for this purpose cannot be read as creating a "well-established" rule regarding how this court should handle complaints that might overlap with a pending class action.

Moreover, even assuming this court gave significant weight to the Tenth Circuit's invocation of Rivarde, the principle discussed in Rivarde is inapplicable here. In Rivarde, a group of plaintiffs filed a lawsuit asking for a modification of a desegregation decree that had already been issued in a separate class action. The Eighth Circuit affirmed the dismissal of the new suit and held that if the plaintiffs wanted to modify the desegregation decree, they would have to intervene in the class action. See Rivarde, 930 F.2d at 642. Plaintiffs here, by contrast, are not asking this court to interfere with any order issued in the ongoing Wit class action.

The other cases cited by Oxford—which have been relied on by a number of insurance companies in multiple different actions in this district—are equally unpersuasive:

> Defendant misinterprets all of the cases it cites for the proposition that district courts should dismiss or stay an individual case if there is a parallel class action with potential preclusive effects. In Cooper v. Federal Reserve Bank of Richmond, the Supreme Court held that a prior judgment in a class action did not

4

> preclude a subsequent individual claim raising a distinct theory of liability. See 467 U.S. at 878, 104 S.Ct. 2794. In Harrison v. Lewis, the district court held that although it had ruled in a prior decision that the plaintiffs had not demonstrated the existence of class-wide sex discrimination, specific plaintiffs belonging to the decertified class could still proceed on "individual claims of disparate treatment" because of the distinct nature of those claims. 559 F. Supp. 943, 947 (D.D.C. 1983). In Crown, Cork & Seal Company v. Parker, the Supreme Court dealt with an entirely different question: "whether the filing of a class action tolls the applicable statute of limitations." 462 U.S. 345, 346, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). The Court ruled that "[t]he filing of a class action tolls the statute of limitations 'as to all asserted members of the class,' not just as to intervenors," which has no bearing on this case. Id. at 350, 103 S.Ct. 2392 (citation omitted). . . In Garcia, the Tenth Circuit rejected a subsequent collateral attack to the final judgment rendered in a prior class action in which the plaintiffs were adequately represented. See Garcia v. Bd. of Ed., Sch. Dist. No. 1, Denver, Colo., 573 F.2d 676, 679 (10th Cir. 1978). In Miller, the Tenth Circuit confronted the unique situation in which a group of plaintiffs filed a new lawsuit to enforce a prior Supreme Court school desegregation order instead of intervening in an existing lawsuit seeking to enforce that order. See Miller v. Bd. of Ed. of Topeka Unified Sch. Dist. 501, 667 F.2d 946, 947 (10th Cir. 1982). And in Sanchez v. Brennan, the Tenth Circuit dismissed the case for lack of subject matter jurisdiction because the plaintiff had failed to exhaust his administrative remedies and had not opted out of "a class action complaint filed with the EEOC" that had reached a settlement, not because there was any pending similar class action in federal court. See 679 F. App'x 671, 672 (10th Cir. 2017). None of these cases make it "well-established" that the court must dismiss or stay this case in favor of a parallel class action, even if it were "premised on the same grounds" as this case.

Johnathan Z. v. Oxford Health Plans, Case No. 2:18-cv-383-JNP-PMW, 2020 WL 607896 at *7 n.4 (D. Utah Feb. 7, 2020).

The situation might well be different if a final judgment had been entered in the Wit case. Once that occurs, this court will have to determine whether the Wit judgment has any res judicata effect on this case.[4] See Cooper, 467 U.S. at 874 ("[A] judgment in a properly entertained class action is binding on class members in any subsequent litigation."). But at

---

[4] It is not necessarily clear whether there will be any res judicata effect from the Wit action because, as discussed below, the claims and parties in this case are somewhat different than those involved in Wit. But in any event, the court cannot address res judicata until there is a final judgment.

present, there is no final judgment.  See Wit, Case No. 3:14-cv-02346-JCS (Dkt. 425 & 426) (pending motion to decertify the class and pending motion for remedies).  Accordingly, there is no precedent in this circuit requiring that this case be stayed.

    B.  First-to-File Rule

While there is no clear rule mandating that this court stay the action in light of Wit, it may nevertheless be appropriate for the court to voluntarily do so under the first-to-file rule.

> The first-to-file rule is a general case management principle that is not codified by statute or procedural rule.  The rule has its genesis in principles of comity, and essentially counsels that federal courts should decline to hear a case if a previously filed case involving nearly identical parties and issues is being pursued in another federal court.  See Nat'l Equip. Rental, Ltd. v. Fowler, 287 F.2d 43, 45 (2d Cir. 1961) ("Sound judicial discretion dictates that the second court decline its consideration of the action before it until the prior action before the first court is terminated."); accord Cessna Aircraft Co. v. Brown, 348 F.2d 689, 692 (10th Cir. 1965). . . .  District courts are afforded discretion when deciding whether the first-to-file rule or an exception to that rule applies to the case at hand.  See Columbia Pictures Indus., Inc. v. Schneider, 435 F. Supp. 742, 747 (S.D.N.Y. 1977) (the issue of whether to apply the first-to-file rule "is committed to the sound discretion of the district court") (internal quotation omitted).

MedSpring Group, Inc. v. Atl. Healthcare Group, Inc., Case No. 1:05-cv-115, 2006 WL 581018 at *3 (D. Utah Mar. 7, 2006).

Courts generally review three factors to determine whether to apply the first-to-file rule: "(1) the chronology of actions; (2) similarity of the parties; and (3) similarity of the issues." Shannon's Rainbow, LLC v. Supernova Media, Inc., 683 F. Supp. 2d 1261, 1278 (D. Utah 2010).

The first factor supports staying the case because the Wit action was filed before this action.  But the second and third factors support allowing this case to proceed.

First, the defendants in the two actions are not the same.  The defendant in Wit is UBH. Plaintiffs here tried to sue an entity called United Healthcare Oxford, but the actual Defendant is Oxford Health Insurance, Inc.  Oxford has failed to explain what kind of relationship it has to UBH.  Instead, Oxford summarily suggests that Plaintiffs' "failure to name UBH as a party [in this action] . . . does not exclude them from the certified class in Wit." (Reply at 3.)  Maybe it excludes them, maybe it does not,[5] but absent some explanation about Oxford's relationship to UBH, the court is not inclined to stay this action when the defendant in Wit is a different entity.

The claims in Wit and this action are also somewhat different.  As other courts have noted, "the Wit class challenged the facial validity of the medical necessity criteria the claims administrator uses[,] . . . while Plaintiffs here challenge Oxford's presumptively valid plan terms and medical necessity criteria as invalidly applied." Johnathan Z., 2020 WL 607896 at *11 (emphasis in original).  Because the claims are different, the remedies sought may also be different.  Here, Plaintiffs may receive the benefits they were denied if the court concludes Oxford applied its medical necessity criteria incorrectly.  The class plaintiffs in Wit, by contrast, are seeking only the right to have their claims remanded to UBH so that UBH can review their claims again under revised medical necessity criteria that correct the facial invalidity.[6]  See Wit, Case No. 3:14-cv-02346-JCS (Dkt. 426) (pending motion for remedies).  Accordingly, the

---

[5] The Wit class applies to anyone whose "request for coverage of residential treatment services . . . was denied by UBH." Wit, Case No. 3:14-cv-02346-JCS (Dkt. No. 174).  If Oxford is a distinct entity from UBH, and if Oxford, rather than UBH, denied Plaintiffs' claim, then it would appear that Plaintiffs fall outside the scope of the certified class in Wit.  Ultimately, the exact scope of the class and its application to Plaintiffs will be determined either by the Wit court as part of its final judgment or by this court once a judgment in Wit is entered and the issue of res judicata is raised in this suit.  It is sufficient at this stage to note that Plaintiffs' relationship to the Wit class is at best ambiguous because of the different defendants in each case.  That lack of clarity supports allowing this action to proceed rather than staying it.

[6] Again, because the remedy being sought in Wit is a remand to UBH, the fact that Plaintiffs have sued Oxford rather than UBH is significant.  A remand to UBH to reconsider Plaintiffs' claim would be meaningless if it was Oxford, not UBH, that was responsible for determining whether Plaintiffs' claim was covered.

7

different nature of the claims and the different types of remedies available also support allowing this case to proceed.

For all of these reasons, the court declines to stay this action under the first-to-file rule.

## II. Parity Act

The Parity Act requires that insurers cover mental health treatments to the same extent as comparable medical or surgical treatments. 29 U.S.C. § 1185a. To properly allege a violation of the Parity Act, plaintiffs "must (1) identify a specific treatment limitation on mental health benefits; (2) identify medical/surgical care covered by the plan that is analogous to the mental health/substance abuse care for which the plaintiffs seek benefits; and (3) plausibly allege a disparity between the treatment limitation on mental health/substance abuse benefits as compared to the limitations that defendants would apply to the covered medical/surgical analog."[7] Johnathan Z., 2020 WL 607896 at *13.

### A. Mental Health Treatment Limitations

Oxford argues that Plaintiffs have failed to identify any provision in their insurance plan that imposes extra limitations on mental health treatment that do not apply equally to comparable medical or surgical treatments. But this argument misstates Plaintiffs' burden. Identifying additional limitations in the plan itself is only necessary if a plaintiff is making a facial challenge to a plan. Plaintiffs here are making an as-applied challenge to the plan. See Kurt W. v. United Healthcare Ins. Co., Case No. 2:19-cv-223, 2019 WL 6790823 at *4 (D. Utah Dec. 12, 2019) (discussing the difference between facial and as-applied challenges under the Parity Act);

---

[7] No Tenth Circuit case has articulated a test for Parity Act claims, and a number of courts in this district have framed the test somewhat differently. See Johnathan Z., 2020 WL 607896 at *13, 13 n.9 (collecting cases). For present purposes, the court need not review the other tests because both parties in this action agree that the three-factor test used in Johnathan Z. is appropriate.

8

Johnathan Z., 2020 WL 607896 at *13 (same). To successfully plead the first element of an as-applied challenge, Plaintiffs need only "allege an impermissible mental-health exclusion in application." Kurt W., 2019 WL 6790823 at *4 (internal quotations omitted). Plaintiffs have done this. Plaintiffs allege that Oxford refused to pay for J. T.'s treatment because he did not qualify for acute residential care, when Oxford should have been evaluating whether he qualified for sub-acute residential care. (Compl. ¶¶ 15, 33-35, 49-51.) In other words, Plaintiffs have alleged that Oxford imposed a higher burden of proof on a claim for mental health treatment than it should have done under the terms of the plan. That is all that is required to plead the first element of the claim.

### B. Analogous Medical or Surgical Treatment

Next, Plaintiffs allege that J. T.'s residential treatment is analogous to "sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities." (Compl. ¶ 50.) Oxford argues this allegation is too conclusory, but as other courts have noted, this allegation is simply an accurate statement of the law:

> The Final Rules under the Parity Act state, in no uncertain terms, that "[b]ehavioral health intermediate services are generally categorized in a similar fashion as analogous medical services; for example, residential treatment tends to be categorized in the same way as skilled nursing facility care in the inpatient classification" and that "if a plan or issuer classifies care in skilled nursing facilities or rehabilitation hospitals as inpatient benefits, then the plan or issuer must likewise treat any covered care in residential treatment facilities for mental health or substance user disorders as an inpatient benefit." 78 Fed. Reg. 68247 (Nov. 13, 2013). As such, Plaintiffs' allegations are not conclusory; they are an accurate recitation of the law.

Kurt W., 2019 WL 6790823 at *5. Accordingly, the court concludes this element has been sufficiently pled.

9

### C. Disparity in Application

Finally, Oxford argues that Plaintiffs' allegations regarding a disparity in how Oxford handles nursing home or rehabilitation treatments and how it handled J. T.'s residential treatment are ambiguous. The court agrees. No facts are pledged regarding how Oxford handles medical and surgical claims; Plaintiffs simply allege summarily that it treats the two types of claims differently. (Compl. ¶¶ 50-51.) In particular, the court notes that no facts at all have been asserted to support Plaintiffs' claim that Oxford treats medical and surgical treatments differently from mental health treatments "based on medical necessity, geographic location, facility type, provider specialty, or other criteria." (Compl. ¶50.) This type of vague laundry list of allegations makes it sound as though Plaintiffs are merely guessing at possible disparities between medical and surgical treatments and mental health treatments. This is insufficient.

Nevertheless, the court believes a Parity Act claim could potentially be pled once discovery has been undertaken. As another court has noted:

> Plaintiffs cannot be expected to plead facts that are in the possession of Defendants, and they will certainly not be punished for not offering those facts when their repeated requests to learn the same have been ignored. Facing a nearly identical situation, this court has determined that "[w]ithout knowing the criteria [the insurer] relies on to evaluate the analogue to [plaintiff's child's] claim for coverage, the Court cannot expect [plaintiff] to allege the nonquantitative treatment limitations [the insurer] applied to those other services with specificity. To require more would prevent any plaintiff from bringing a mental health parity claim based on disparate operation unless she had suffered the misfortune of having her admission to a skilled nursing facility for medical reasons approved and her admission to a residential treatment facility denied and thus would have had personal experience with both standards." Melissa P. v. Aetna Life Ins. Co., No. 2:18-cv-216, 2018 WL 6788521, at *3 (D. Utah Dec. 26, 2018). The court agrees and refuses to penalize Plaintiffs for not offering facts that are beyond their reach.

Kurt W., 2019 WL 6790823 at *6 (alterations in original).

Because the third element of the claim has not been sufficiently pled, the court will dismiss Plaintiffs' second cause of action for violations of the Parity Act.  But the court will also permit Plaintiffs to engage in discovery in an effort to remedy the deficiencies in their claim.  If Plaintiffs still want to pursue their Parity Act claim, they must conduct discovery and then file a motion for leave to amend within sixty days.

## ORDER

Oxford's Motion to Dismiss (ECF No. 15) is GRANTED in part.  Plaintiffs' second cause of action is dismissed without prejudice.  Plaintiffs may file a motion for leave to amend within sixty days.

DATED this 11th day of August, 2020.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge